IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT BRIAN STEFFLER,                          3:09-cv-01371-MA

            Petitioner,                  OPINION AND ORDER

   v.

BRIAN BELLEQUE,

            Respondent.


PATRICK J. EHLERS
Assistant Federal Public Defender
101 Southwest Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
JONATHAN W. DIEHL
Assistant Attorney General
Oregon Department of Justice
1162 Court Street Northeast
Salem, Oregon 97301-4096

    Attorneys for Respondent


///

///


1 - OPINION AND ORDER

MARSH, Judge

Petitioner, an inmate at Two Rivers Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's habeas corpus petition is denied.

**BACKGROUND**

On August 15, 1999, petitioner Scott Brian Steffler murdered Sheila Theeler on a hill outside Roseburg, Oregon by stabbing her over thirty times and cutting her throat. Over the next two days, petitioner made telephone calls to his father during which he confessed to the murder. On August 17, petitioner's father notified Roseburg Police that petitioner had murdered a female neighbor, later confirmed to be Ms. Theeler. Roseburg Police discovered that petitioner was on a southbound Greyhound bus. At approximately 9:55 pm on August 17, petitioner was arrested by Sacramento Police at a Sacramento bus terminal. Detectives from Roseburg flew down to Sacramento that night and, shortly after their arrival in the early morning hours of August 18, questioned petitioner about the murder. Petitioner confessed to killing Ms. Theeler and extensively discussed the details of the murder. A search of his belongings turned up a broken, bloody knife. Roseburg Police later found Ms. Theeler's body in the location described by petitioner.

In the late evening of August 18, the detectives drove petitioner back to Roseburg. During the drive, petitioner shared more details of the murder with detectives, including showing them the rest stop where he disposed of some of Ms. Theeler's personal items. Shortly after arriving in Douglas County, petitioner accompanied detectives to the scene of the crime and reenacted the murder. Later that day, petitioner again recounted his story to Dr. Colistro, a state psychiatrist.

On July 12, 2001, a jury convicted petitioner of Murder and Aggravated Murder. Resp.'s Exh. 101. Petitioner avoided a potential death penalty by stipulating to a sentence of life without the possibility of parole. Resp.'s Exh. 120. Petitioner's conviction was affirmed, without opinion, by the Oregon Court of Appeals, and the Oregon Supreme Court denied review. State v. Steffler, 200 Or.App. 291, 114 P.3d 1157, rev. denied, 339 Or. 544 (2005), cert. denied 548 U.S. 926 (2006).

Petitioner subsequently sought state post-conviction relief. The post-conviction court denied relief on all grounds, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Steffler v. Belleque, 230 Or.App. 248, 214 P.3d 853, rev. denied, 347 Or. 290 (2009).

In the instant proceeding, petitioner raises six grounds for relief. Respondent moves to deny habeas relief on the basis that ground four is procedurally defaulted, grounds one and five fail to

state a basis for habeas relief, and grounds two, three, and six fail on the merits.

## DISCUSSION

I.   **Procedural Default (Ground Four)**.

A.   **Applicable Law**.

Generally, a § 2254 petitioner must exhaust his available state remedies before filing a habeas petition in federal court. Castille v. Peoples, 489 U.S. 346, 349 (1989).  A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claims to the appropriate state courts at all appellate stages afforded under state law.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004). Raising a claim in a procedural posture in which its merits will not be considered, absent special and important reasons, does not constitute a fair presentation. Castille, 489 U.S. at 351; but see Casey, 386 F.3d at 918 n.23 (noting that a claim *is* exhausted *if* the state appellate court expressly addresses the claim, whether or not it was fairly presented).

When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. Casey, 386 F.3d at 920; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).  Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the

procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1139 (9th Cir. 2007); <u>Coleman</u>, 501 U.S. at 750.

**B.  <u>Analysis</u>.**

In petitioner's fourth ground for relief, petitioner alleges that the trial court violated his Sixth Amendment right to confront witnesses by admitting hearsay evidence of his father's phone calls to the police.[1]  Respondent argues that this ground is procedurally defaulted because petitioner did not raise the issue at trial.  In response, petitioner argues that an intervening change in the law (<u>Crawford v. Washington</u>, 541 U.S. 36 (2004)), and his supplemental briefing on direct appeal constitutes a fair presentation of the issue for exhaustion purposes.

At trial, petitioner stipulated to the admission of his father's statements to police.  Tr. 571-72.  After trial, but while petitioner's appeal was pending before the Oregon Court of Appeals, the United States Supreme Court decided <u>Crawford</u> (holding that admission of testimonial out-of-court statements is barred by the Confrontation Clause unless the witness was unavailable *and* the defendant had a prior opportunity to cross-examine).  In response to <u>Crawford</u>, petitioner successfully moved the Oregon Court of

---

[1] Petitioner's father died in a car accident days after petitioner's arrest.

Appeals for leave to file supplemental briefing arguing that the introduction of his father's telephone calls to the police violated the Confrontation Clause. <u>See</u> Resp.'s Exh. 105. Petitioner again raised the issue in his petition for review to the Oregon Supreme Court. Resp.'s Exh. 107.

Because petitioner stipulated to the admission of his father's statements at trial, the Confrontation Clause issue necessarily was raised on direct appeal as "plain error." Under Oregon law, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court . . . provided that the appellate court may consider an error of law apparent on the face of the record." Or. R. App. P. 5.45(1). Determining whether to review an unpreserved error involves a two-step process. <u>State v. Gornick</u>, 340 Or. 160, 166, 130 P.3d 780 (2006).

First, the appellate court must determine whether the error is (1) one "of law"; (2) obvious and not reasonably in dispute; and (3) appears on the face of the record, i.e., the reviewing court need not go outside the record to identify the error or choose between competing inferences. <u>Ailes v. Portland Meadows, Inc.</u>, 312 Or. 376, 382, 823 P.2d 956 (1991); <u>Gornick</u>, 340 Or. at 166-67. Second, the state court must decide whether to exercise its discretion to consider the claim, taking into account "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case;

how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way." <u>Ailes</u>, 312 Or. at 382 n.6; <u>State v. Fults</u>, 343 Or. 515, 522, 173 P.3d 822 (2007).

The decision to consider a claim as plain error is in the Court of Appeals' discretion, which is to be exercised with "utmost caution" and only in "rare and exceptional cases." <u>Gornick</u>, 340 Or. at 166 (internal quotations omitted). Presentation of a claim to the Oregon Court of Appeals on a plain error basis, therefore, is not a fair presentation for exhaustion purposes because the claim's merits will not be considered absent special and important reasons to do so. <u>See</u> <u>Castille</u>, 489 U.S. at 351. Accordingly, I conclude that petitioner's Confrontation Clause claim was not fairly presented to the Oregon courts on direct appeal, and the claim is now procedurally defaulted. <u>See, e.g.</u>, <u>Moore v. Mills</u>, No. 07-cv-1805-HU (#40), 2010 WL 3656061 at *2-*4 (D. Or. May 21, 2010), <u>adopted by</u> 2010 WL 3656056 (D. Or. Sep. 15, 2010); <u>Smith v. Hill</u>, No. 09-cv-1020-MO (#41), 2011 WL 1085263 at *4-*5 (D. Or. Mar. 22, 2011); <u>Newcomb v. Belleque</u>, No. 09-cv-936-HU (#53), 2012 WL 1758639 at *5-*6 (D. Or. Jan. 23, 2012), <u>adopted by</u> 2012 WL 1755678 (D. Or. May 15, 2012); <u>Karnes v. Thompson</u>, No. 10-cv-238-PK (#43), 2012 WL 707084 at *7-*8, *12 (D. Or. Feb. 8, 2012), <u>adopted by</u> 2012 WL 707078 (D. Or. Mar. 5, 2012).

Petitioner argues that any procedural default was cured because the Court of Appeals considered his Confrontation Clause claim on the merits by granting his motion for leave to file supplemental briefing. See Casey, 386 F.3d at 916 n.18 (noting that a lack of fair presentation is excused where the state court expressly addresses the claim). The Court of Appeals' only action, however, was to allow petitioner to submit supplemental briefing on this point, *not* to consider the merits. Under Oregon law, the Court of Appeals could not exercise its discretion to review for plain error without expressly articulating its reasons for doing so. Ailes, 312 Or. at 382. Because the Court of Appeals did not expressly address the issue, it did not consider petitioner's Confrontation Clause claim on the merits.

Further, petitioner has made no showing of cause and prejudice to excuse his default, or that a miscarriage of justice will result if his defaulted claim is not considered. See Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 485 (1986). Thus, habeas review of petitioner's Confrontation Clause claim is barred.[2]

///

///

---

[2]  It is worthy of note that, even if the Supreme Court's intervening decision in Crawford were considered to be cause sufficient to excuse petitioner's procedural default, petitioner could not demonstrate prejudice in light of the overwhelming evidence of petitioner's guilt apart from petitioner's admissions to his father.

## II.  **Failure to State a Basis for Habeas Relief**.

### A.  **Ground One**.

In ground one, petitioner claims that the trial court's introduction of certain evidence violated his Fourth and Fourteenth Amendment right against unreasonable searches and seizures. Respondent argues that habeas review of this ground is barred by the Supreme Court's holding in Stone v. Powell, 428 U.S. 465 (1976). I agree.

In Stone, the Supreme Court held that a habeas petitioner may not be granted relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial if the state courts provided a full and fair opportunity to litigate the Fourth Amendment claim. Stone, 428 U.S. at 494; Terrovona v. Kincheloe, 912 F.2d 1176, 1178 (9th Cir. 1990). The relevant inquiry under Stone, is whether the petitioner had the opportunity to litigate his claim, not whether he in fact did so or even whether the claim was correctly decided. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

Petitioner argues that he was denied a full and fair opportunity to litigate the Fourth Amendment issue because the state courts made several errors of fact and law in ruling on his motion to suppress, and because the Oregon Court of Appeals affirmed the trial court without opinion, and the Supreme Court denied review. While nominally framed in terms of a full and fair

opportunity to litigate his Fourth Amendment claims, most of petitioner's arguments go to the underlying merits of his constitutional claim.    Accordingly, they are barred by Stone so long as petitioner had a full and fair opportunity to litigate them.[3]

Petitioner submitted two pretrial motions to exclude evidence, including a motion to suppress the knife in question on Fourth Amendment grounds, and accompanying memoranda in support.    Resp.'s Exh. 122.    The state trial court held a two-day omnibus pretrial hearing on those motions.    Tr. Part A, 1-308.    After almost two months of consideration, the trial court issued a fourteen-page opinion denying petitioner's motions.    Resp.'s Exh. 125.    On appeal, petitioner filed three briefs, two of which directly addressed the Fourth Amendment claims.    Resp.'s Exh. 103-05.    The Court of Appeals heard oral argument and affirmed without opinion.    Resp.'s Exh. 109.

The foregoing facts demonstrate that petitioner received a full and fair opportunity to litigate his Fourth Amendment claims at the trial level.    Further, in light of the substantial briefing

---

[3] Similarly, petitioner's contention that the State's inclusion of unpreserved or infirm legal arguments in its appellate brief denied him a full and fair opportunity to litigate his Fourth Amendment claims is incorrect.    The question is whether the petitioner had a full and fair opportunity to litigate his claims, Ortiz-Sandoval, 81 F.3d at 899, not whether the State properly defended the state court's ruling.

and argument allowed by the Oregon Court of Appeals on the Fourth Amendment issue, I conclude that the Court of Appeals' summary affirmance, and the Oregon Supreme Court's denial of discretionary review do not, standing alone, warrant a finding that petitioner was denied a full and fair opportunity to litigate his Fourth Amendment claims on appeal. See Terrovona, 912 F.2d at 1178-79 (extent to which claims are briefed before, and considered by, the appellate courts is relevant to Stone inquiry); Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981) (same).

In sum, after an independent review of the record, I find that petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. Therefore, petitioner's Fourth Amendment claim is barred by Stone.

B.    **Ground Five**.

In ground five, petitioner alleges that he was denied due process by the post-conviction court's refusal to allow petitioner to introduce evidence to challenge his conviction. Petitioner alleges that when his attorney "showed up for court without [his] work product, Petitioner requested leave to proceed pro se provided he be given time to prepare." Habeas Petition at 8B.

Habeas relief on Ground Five is not warranted because alleged errors in state post-conviction proceedings are not cognizable in federal habeas proceedings. Ortiz v. Stewart, 149 F.3d 923, 939

(9th Cir. 1998); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (*per curiam*).

III. **The Merits**.

A federal court may not grant habeas corpus relief unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2); Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785-86 (2011). Factual findings of the state courts are presumed to be correct, and this presumption must be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A. **Ground Two (Fifth Amendment)**.

1. **Background.**

After his late-night arrest in Sacramento, California, petitioner was interrogated by Detectives Joe Perkins and Joe Kaney from the Roseburg Police Department and Douglas County Sheriff's Office beginning shortly after 3:30 in the morning. Resp.'s Exh. 126 at 1. The interrogation was videotaped, transcribed, and later viewed by the trial judge. Id. at 42; Resp.'s Exh. 125 at 1 & 8. Petitioner was advised of his Miranda rights by Detective Kaney:

> **Kaney:**     * * * It's my duty to inform you, you have the right to remain silent. Anything you say can and will be used against you in a court of

> law. You have the right to have an attorney
> present during any questioning, if you wish
> one. If you cannot afford to hire one, one
> will be appointed to represent you at no cost
> to yourself. Now you have the right to
> interrupt the conversation anytime and invoke
> your rights, okay, and just because you agreed
> to talk to us about some things, doesn't mean
> you have to talk to us about everything.
> Okay, do you understand all your rights?

**Steffler:** (Indicates affirmative)

**Kaney:** Okay. Keeping those rights in mind, you still willing to talk to us?

**Steffler:** (Indicates affirmative)

**Kaney:** Okay.

**Perkins:** I kind of thought so, I mean you waited for us.

 * * * *

**Kaney:** Okay. Do you have any questions of us?

**Steffler:** I committed a horrendous crime, I'm not expecting a whole lot of favors.

Id. at 1-2. Over the course of the next hour and a half, petitioner confessed to murdering Sheila Theeler, and detailed the events before and after the murder. The detectives responded to petitioner's confession with the following questions:

**Kaney:** Was your statement made freely and voluntarily?

**Steffler:** Yeah.

**Perkins:** You knew you didn't have to talk to us if you didn't want to, right?

**Steffler:** (Indicates affirmative)

13 - OPINION AND ORDER

**Kaney:**    And is it the truth, to the best of your knowledge?

**Steffler:** Yeah.

**Perkins:**    *Okay. I mean Joe read you your rights when we first walked in, and you understood those, right?*

**Steffler:** *(Indicates affirmative)*

Id. at 23 (emphasis added).

Additionally, shortly before a break in the interview at approximately 4:20 a.m., the following exchange took place:

**Perkins:**    Okay. You know, I asked you....I asked you how you felt about the way Joe and I treated you, okay, from talking to the detectives here, sounds like you've been treated fairly well by them too, is that true? I mean, you know, for lack of a better term, nobody has beat you with a rubber hose, nobody has, you know, okay, no Chinese water torture or anything like that. Were you treated pretty much respectfully even by the officers at the bus station, considering the circumstances?

**Steffler:** Yeah.

**Perkins:**    Okay. And the same with the officers here?

**Steffler:** (Indicates affirmative)

**Perkins:**    Okay. Can we talk to you again?

**Steffler:** *Guess I don't have a choice.*

**Perkins:**    Oh, yeah, you had the choice in the beginning, you know.

Id. at 29 (emphasis added). Finally, as the interrogation was concluding just before 5:00 a.m., Detective Perkins again asked whether petitioner was acting voluntarily:

14 - OPINION AND ORDER

**Perkins:**    For the purpose of the tape again, while the
tape was off this last time, anybody threaten
you?

**Steffler:**    No.

**Perkins:**    Anybody promise you anything, you still
understand you don't have to talk to us, but
that you're talking to us because you want to.

**Steffler:**    Yeah.

Id. at 42.

Prior to trial, petitioner argued that his statements in the

interview were obtained in violation of Miranda because he did not

sufficiently understand his rights to effectuate a knowing and

intelligent waiver.  Resp.'s Exh. 122 at 21-24.  After hearing the

testimony and reviewing all of the evidence (including the

videotapes of petitioner's interrogation (State's Exhibits 4 and

6)), the trial court denied petitioner's motion to suppress, as

follows:

> State's Exhibits 4 and 6 show the defendant as
> quiet, alert, and responsive to the detectives and their
> questions.  *He appeared to understand his rights,* and
> demonstrated a cooperative willingness to talk to the
> detectives.  The defendant appeared remorseful and
> embarrassed when he looked downward or away from the
> detectives.  *The defendant did not demonstrate any mental
> confusion, non-responsiveness,* drowsiness, or exhaustion
> when he spoke.
>
>                    *  *  *  *  *
>
> The court finds that neither the Sacramento police
> officers nor the Oregon detectives intentionally deprived
> the defendant of any sleep, food, water or other personal
> necessities in order to gain a psychological advantage.
> *  *  *  Throughout the interviews, the *defendant he [sic]*

*appeared to understand the proceedings*, and remained alert and responsive.

\* \* \* \* \*

\* \* \* When the detectives advised defendant of his <u>Miranda</u> rights and asked defendant if he understood his rights and was willing to speak, defendant nodded his head in an affirmative manner. Defendant was awake, lucid, and freely offered statements throughout the interview. Further, authorities were not required to re-read defendant his <u>Miranda</u> rights following every break in the interrogation. Under the standards set forth in <u>Vu</u> and <u>Culombe</u>, the court finds that a preponderance of the evidence suggests that defendant's waivers and statements during the interrogation were made voluntarily, intelligently, and understandingly.

Resp.'s Exh. 125 at 8-9 & 12.

**2.  Analysis.**

Petitioner argues that his conviction was obtained in violation of his right against self-incrimination because the trial judge (1) unreasonably relied upon petitioner's headnod (non-verbal) and completely ignored his statement "Guess I don't have a choice"; and (2) erroneously relied upon <u>State v. Vu</u>, 307 Or. 419, 770 P.2d 577 (1989) and <u>Culombe v. Connecticut</u>, 367 U.S. 568 (1961), rather than the standard set forth in <u>Miranda</u>, and thereby incorrectly focused on the "voluntariness" of petitioner's confession, rather than whether he understood his rights and intelligently and knowingly relinquished them.

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966), the Supreme Court held that, prior to questioning, a suspect be apprised of his constitutional right to remain silent and to consult an attorney.

16 - OPINION AND ORDER

Any waiver of <u>Miranda</u> rights must be made voluntarily, knowingly and intelligently. <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). To be voluntary, the waiver must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception." <u>Id.</u> To be knowing and intelligent, the waiver must have "been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Id.</u> A <u>Miranda</u> waiver is only effective if the totality of the circumstances surrounding the interrogation reveal "both an uncoerced choice and the requisite level of comprehension." <u>Id.</u>

In the instant proceeding, petitioner has failed to rebut, with clear and convincing evidence, the trial court's factual findings that petitioner was alert, responsive, appeared to understand his rights, demonstrated a cooperative willingness to talk to the detectives, and affirmatively nodded when asked if he was willing to waive his rights. Accordingly, those factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

Petitioner argues that the trial court's finding that he understood his <u>Miranda</u> rights was unreasonable because he made clear he did not understand those rights when he responded to a request by detectives to talk again with "Guess I don't have a choice." <u>See</u> Resp.'s Exh. 126 at 29. This argument is unavailing.

The record reflects that petitioner's rights were thoroughly and accurately explained to him.    Resp.'s Exh. 126 at 1-2. Petitioner's statement that he did not have a choice came after he twice indicated that he understood his Miranda rights, and before he would again confirm his understanding of his rights at the end of the interview.  Resp.'s Exh. 126 at 1-2, 23, 42.    Petitioner twice stated that he had not been coerced or threatened.  Id. at 29 & 42.    In sum, the trial court's conclusion that petitioner voluntarily, intelligently, and understandingly waived his Miranda rights was properly based upon the totality of the circumstances. Accordingly, petitioner has failed to demonstrate that the state court's decision is based upon an unreasonable determination of the facts in light of the evidence presented.    See 28 U.S.C. § 2254(d)(2); Moran, 475 U.S. at 421.

Further, petitioner has made no showing that the trial court's denial of petitioner's motion to suppress is contrary to, or an unreasonable application of clearly established federal law.    28 U.S.C. § 2254(d)(1).    The trial court applied both federal and state law, including Miranda, in analyzing petitioner's Fifth Amendment arguments.  Resp.'s Exh. 125 at 9-12.  Nothing in the state court's decision, including its citation to Vu and Culombe supports a conclusion that the trial court's decision is contrary to, or an unreasonable application of Miranda.  Indeed, Culombe was relevant to petitioner's case, even in light of Miranda, because

_Culombe_ directly addressed the voluntariness of a confession (at issue in petitioner's case).  _Culombe_, 367 U.S. at 568-635.  The state court's citation to _Vu_ was appropriate because the court was tasked with applying both state and federal law.  For all of these reasons, habeas corpus relief is not warranted as to petitioner's ground for relief two.

**B.    Ground Three (State Court Jurisdiction)**.

In ground three, petitioner argues that the terms of the 1854 Cow Creek Treaty deprived the state court of jurisdiction over his murder charges and required that he be tried under federal law. The relevant portion of the Cow Creek Treaty provides as follows:

> That the friendship which is now established between the United States and the Cow Creek band of Indians, shall not be interrupted by the misconduct of individuals, it is hereby agreed that for injuries done, no private revenge or retaliation shall take place; but instead thereof complaint shall be made by the party injured to the Indian agent; and it shall be the duty of the chiefs of said band of Indians, upon complaint being made as aforesaid, to deliver up the person against whom the complaint is made, to the end that he may be punished, agreeably to the laws of the United States; and in like manner if any violation, robbery, or murder shall be committed on any Indian belonging to said band, the person so offending shall be tried, and if found guilty, shall be punished according to the laws of the United States.

10 Stat. 1027 (1853).

Before trial, petitioner moved to dismiss the murder charges for lack of jurisdiction on the basis that the Cow Creek Treaty required that he be tried under federal law, rather than state law.

Resp.'s Exh. 130.   The parties stipulated that petitioner was a member of the Cow Creek Band of the Umpqua Tribe of Indians, that the victim was not a member of any tribe, and that the alleged crime occurred outside of Indian Country.   Tr. 510-11.   The trial court denied petitioner's motion, finding that the state had jurisdiction because petitioner's crime was committed outside Indian Country against a non-Indian victim.   Resp.'s Exh. 103 at ER-25.

"Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-49 (1973); see also Nevada v. Hicks, 533 U.S. 353, 362 (2001) ("It is also well established in our precedent that States have criminal jurisdiction over reservation Indians for crimes committed . . . off the reservation."); Organized Village of Kake v. Egan, 369 U.S. 60, 75 (1962) ("It has never been doubted that States may punish crimes committed by Indians, even reservation Indians, outside of Indian country.").

Petitioner argues that the Cow Creek Treaty is sufficiently express federal law contrary to the rule of state jurisdiction over crimes committed outside Indian Country that the State's exercise of jurisdiction was inappropriate under Mescalero Apache Tribe. Petitioner maintains that the state trial court unreasonably

20 - OPINION AND ORDER

determined the facts regarding the Cow Creek Treaty by ignoring the treaty's plain meaning and failing to recognize its unique characteristics.    See 28 U.S.C. § 2254(d)(2).    Additionally, petitioner asserts that the state court unreasonably applied clearly established Supreme Court precedent by failing to interpret the treaty to divest the state of jurisdiction to prosecute him. See 28 U.S.C. § 2254(d)(1).

In arguing that the trial court unreasonably determined the facts surrounding the Cow Creek Treaty, petitioner maintains that the plain language of the treaty provides that he was to be tried under federal law, and, thus, the state court lacked jurisdiction. In support of this argument, petitioner cites general rules of treaty interpretation, including that treaty interpretation begins with the plain meaning of the text; a treaty should be interpreted as the Indian would have understood it; and ambiguities should be resolved in favor of the tribe.   See, e.g., Medellin v. Texas, 552 U.S. 491, 506 (2008); Choctaw Nation v. Oklahoma, 397 U.S. 620, 631 (1970); Jones v. Meehan, 175 U.S. 1, 11 (1899).

Petitioner's reliance upon § 2254(d)(2) is misplaced.   Section 2254(d)(2) permits a federal habeas court to grant relief if the state court determination "resulted in a decision that was based on an unreasonable determination of the facts."   The interpretation and application of an Indian treaty is a question of law, not fact. United States v. State of Washington, 157 F.3d 630, 642 (9th Cir.

1998). The state court's conclusions as to legal issues and their application are reviewed under § 2254(d)(1). Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004). Thus, habeas relief is warranted only if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, under 28 U.S.C. § 2254(d)(1).

Citing a mix of state and federal law, the trial court held that it retained jurisdiction over crimes committed by Indians outside of Indian Country. Petitioner has failed to carry his burden of showing that this decision was contrary to, or an unreasonable application of, clearly established federal law. Rather, the trial court's interpretation of the treaty is reasonable in light of the treaty's historical context and subsequent Congressional action.

Petitioner has cited no case interpreting the language of the Cow Creek Treaty, or any similar treaty, to deprive a state of jurisdiction over crimes committed by an Indian outside Indian Country. This failure is especially significant in light of the well established rule that States generally have criminal jurisdiction over crimes committed off the reservation. See Mescalero Apache Tribe, 411 U.S. at 148-49; Hicks, 533 U.S. at 362; Organized Village of Kake, 369 U.S. at 75.

A review of the language of the Cow Creek Treaty in historical context demonstrates that the state court's interpretation of the

treaty was reasonable.  The Cow Creek Treaty was entered into in 1854 - five years before Oregon's admission into the Union.  Thus, as understood at the time of ratification, the treaty's reference to the United States' jurisdiction may not have been exclusive of an as-yet existent state's, but rather merely a reference to the only relevant sovereign at the time.

Additionally, I reject petitioner's assertion that Public Law 280 is inapplicable to the resolution of this issue.  On the contrary, Public Law 280 suggests Congress understood Oregon to have jurisdiction over crimes committed outside Indian Country. Public Law 280 (18 U.S.C. § 1162(a)), provides that the State will have jurisdiction over all crimes committed by or against Indians in areas of Indian Country "to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State."

While petitioner is correct that Public Law 280 only expressly provides that Oregon has jurisdiction over crimes *within Indian Country*, the language assumes that the affected states had jurisdiction over criminal offenses committed outside Indian Country.  Additionally, it is clear Congress was aware of circumstances relating to individual states, tribes, and reservations at the time of passage of Public Law 280, because the law applies only to Oregon and five other states, and included exceptions for individual reservations.  Id.  In sum, the passage

of Public Law 280 supports the conclusion that the state court's construction of the treaty was not unreasonable, and that its exercise of jurisdiction in this case was not an unreasonable application of clearly established Federal law. For all of these reasons, habeas relief is not warranted under 28 U.S.C. § 2254(d)(1).

**C.** **Ground Six (Ineffective Assistance of Counsel)**.

In ground six, petitioner asserts that trial and appellate counsel were constitutionally deficient by failing to (1) effectively litigate petitioner's motion to suppress; (2) properly object and move for a mistrial due to prosecutorial misconduct; (3) properly litigate petitioner's motion for judgment of acquittal; (4) properly object to petitioner's sentence of life without parole; and (5) allow petitioner to testify in his own defense. Respondent moves the court to deny habeas relief on the basis that the state court's rejection of petitioner's ineffective assistance claims is entitled to deference. For the reasons set forth below, I conclude that the state court's rejection of petitioner's ineffective assistance claims was neither contrary to, nor an unreasonable application of clearly established federal law.

In Strickland v. Washington, the Supreme Court established a two-part test to determine whether a defendant has received constitutionally deficient counsel. 466 U.S. 668, 687 (1984). Under this test, petitioner must not only prove that counsel was

deficient, but also that the deficient performance prejudiced petitioner's defense. <u>Williams</u>, 529 U.S. at 390; <u>Strickland</u>, 466 U.S. at 687.

To prove deficiency of performance, petitioner "'must show that counsel's representation fell below an objective standard of reasonableness.'" <u>Williams</u>, 529 U.S. at 390-91 (quoting <u>Strickland</u>, 466 U.S. at 688). "To establish prejudice [petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> at 391 (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In evaluating proof of prejudice, this court "must consider the totality of the evidence" before the jury. <u>Strickland</u>, 466 U.S. at 696. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." <u>Id.</u>

Ineffective assistance of appellate counsel claims are also reviewed under the <u>Strickland</u> standard. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) (citing <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986)). Competent appellate counsel need not raise every colorable argument on appeal; rather, counsel is expected to use his or her professional judgment in determining which arguments to present to the court. <u>Smith</u>, 477 U.S. at 535-36.

1.   **Ineffective Litigation of Suppression Issue.**

   a.   **Trial Counsel.**

Petitioner argues that trial counsel was ineffective in failing to file a motion for a new trial in response to the trial court's erroneous finding that defendant consented to a search of a bag that contained the murder weapon, and in applying the inevitable discovery doctrine.   I disagree.

During the suppression hearing, trial counsel argued both that the bag must have been searched *before* consent was given, and that the inevitable discovery doctrine did not apply.   Tr. 291-92, 296-97; see also Resp.'s Exh. 122 at 3-8.   The parties elicited testimony regarding the sequence of events that led to the search of the bag and the officers' knowledge of the knife's presence, including testimony from the officers involved that the bag was only searched *after* consent was given.   The trial court credited the testimony of the officers, and found that the officers searched the bag containing the knife after petitioner gave consent. Resp.'s Exh. 125 at 6.

Trial counsel's representation of petitioner, then, did not fall below an objective standard of reasonableness, nor did petitioner suffer prejudice by counsel's failure to make a repetitive motion for a new trial based on arguments the trial court had already addressed during the suppression hearing.

///

**b.    Appellate Counsel.**

Petitioner argues that appellate counsel was ineffective in failing to object to the State's reliance upon arguments raised for the first time on appeal.    Petitioner's first argument – that appellate counsel unreasonably failed to object to the State's reliance upon a search incident to arrest theory not relied upon by the trial court – is unavailing.    Contrary to petitioner's assertion, the State's search incident to arrest argument was preserved at trial.[4]    Tr. 284-85.    Moreover, to the extent the Court of Appeals relied upon a search incident to arrest theory, "appellate courts may examine legal arguments not relied on by a trial court to determine if those arguments provide a basis for affirmance."    State v. Rogers, 330 Or. 282, 295, 4 P.3d 1261 (2000).    Hence, there was no basis for appellate counsel to object to the State's search incident to arrest argument, and counsel's failure to raise the objection was not objectively unreasonable.

Petitioner's second argument – that appellate counsel unreasonably failed to rebut the State's harmless error argument by relying upon Honda Motor Co., Ltd v. Oberg, 512 U.S. 415 (1994) – also misses the mark.    Oberg is irrelevant in this case, as it

---

[4] To the extent petitioner argues that appellate counsel failed to address the merits of the State's search incident to arrest argument, he is incorrect.    Appellate counsel spent a considerable portion of her allotted time at oral argument arguing that the search of the bag could not be justified on a search incident to arrest theory. Pet.'s Exh. 14 at 2:00-6:00.

dealt with judicial review of civil punitive damages awards, not harmless error review of erroneously denied motions to suppress in criminal proceedings.  512 U.S. 415.  Oregon cases have refused to reverse convictions where improperly admitted evidence was duplicitous or cumulative of properly admitted evidence.  See, e.g., State v. McGinnis, 335 Or. 243, 64 P.3d 1123 (2003); State v. Coleman, 130 Or.App. 656, 664-65, 883 P.2d 266 (1994).  Thus, it was not objectively unreasonable for appellate counsel to forego making petitioner's asserted argument.

**2.   Failure to Object to Alleged Prosecutorial Misconduct.**

Petitioner alleges that trial counsel was ineffective for failing to object to prosecutorial misconduct.  Petitioner first argues that trial counsel was ineffective in failing to object to the prosecutor's suggestion in closing argument that petitioner lied about details of the murder during a videotaped re-enactment.  Tr. 1403.  Rather than object, defense counsel chose to rebut the argument in his own closing by pointing out that petitioner cooperated with law enforcement after his arrest and that the detectives involved in the case found petitioner forthcoming and truthful.  Tr. 1414-15.

"Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."

United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993) (citing Strickland, 466 U.S. at 689). Moreover, even if trial counsel had raised an objection, petitioner has failed to demonstrate that it would have been successful given the fact that Oregon law allows parties to attack the credibility of witnesses. See Quimby v. Hill, 213 Or.App. 124, 131, 159 P.3d 1264 (2007) (citing Or. Evidence Code 607); State v. Hanson, 10 Or.App. 363, 365, 499 P.2d 825 (1972). Accordingly, counsel's failure to object was a reasonable strategic choice that did not fall below an objective standard of reasonableness, and petitioner suffered no prejudice.

Second, petitioner claims that trial counsel was ineffective in failing to object to the prosecutor's theory that the defendant committed the murder because the victim rebuffed his sexual advances.[5] This theory was based on petitioner's statement in his initial interrogation that he went to the scene of the murder with the victim "expecting to get a little." Resp.'s Exh. 126 at 40. The prosecutor introduced a recording of the interrogation where plaintiff made the above statement, elicited testimony from experts about whether petitioner's psychological profile was consistent

---

[5] Petitioner also makes reference to an instance at trial in which one of the State's witnesses referred to the events leading up to the murder as a "sexual assault." Petitioner's trial counsel immediately objected and the judge sustained and struck the reference. Tr. 919-20. Clearly, that is not an instance of ineffective assistance of counsel.

with sexual rejection being a motive for the murder, and suggested at closing arguments that petitioner may have been motivated by sexual rejection.

Because the State's theory of aggravated murder was that petitioner killed the victim to cover up his immediately preceding assault, defense counsel countered the State's theory at closing by arguing that any other motive – such as rejection of petitioner's sexual advances – was irrelevant.  Tr. 1406.  Additionally, defense counsel argued that the sexual rejection theory actually tended to negate the assault theory necessary for conviction of aggravated murder, as it suggested the murder was motivated by rejection induced rage rather than a calculated attempt to cover up another crime.  Tr. 1432-33.  However, because the prosecutor had an arguable factual basis for pursuing this theory, defense counsel's failure to object did not fall below an objective standard of reasonableness.

Third, petitioner claims that trial counsel was ineffective in not moving for a mistrial after the prosecutor elicited testimony from petitioner's psychological expert that he had reviewed police reports that detailed prior instances in which petitioner allegedly shot a barking dog and acted violently toward a prior girlfriend. Because trial counsel made a timely objection to the testimony and the trial court ultimately struck the objectionable answer, trial

counsel's performance in this respect was not constitutionally deficient. Tr. 1026-32.

Fourth, petitioner argues that trial counsel was inadequate for failing to move for a mistrial after the prosecutor sought to rebut petitioner's extreme emotional distress defense by offering evidence that, at the time of the murder, petitioner was still in the process of applying to the National Guard. Petitioner argued that his repeated rejections from the military contributed to his fragile mental state at the time of the murder. To rebut petitioner's claim, the State put on evidence, over an objection by defense counsel, that petitioner was still in the process of applying for admission to the National Guard, and argued during closing that petitioner's dream of military service was still alive. Tr. 1225-46.

The prosecution's argument was made to show that the barriers to petitioner's acceptance into the military were not so great as to contribute to extreme emotional disturbance. Because this argument was relevant to petitioner's claim of extreme emotional disturbance, trial counsel was not objectively unreasonable in failing to move for a mistrial on this account. Additionally, there can be no prejudice on this claim, as the jury convicted petitioner of Aggravated Murder - a charge to which extreme emotional disturbance is not a defense. See State v. Moore, 324 Or. 396, 411-13, 927 P.2d 1073 (1996).

31 - OPINION AND ORDER

Fifth, petitioner argues that trial counsel was ineffective in failing to object to *false* testimony by the State's expert psychologist, Dr. Frank Colistro, that petitioner was laid off from a job for charging the purchase of personal tools to his employer's account.   In explaining his conclusion that petitioner had a tendency to blame his own failings on others, Dr. Colistro testified: "So if you catch him stealing or buying tools at work and he's disciplined for that, he's mad at you because you put him in a bad spot." Tr. 1280.   Trial counsel was not ineffective in failing to object to this testimony because it was the State's expert conclusions drawn from petitioner's own statements.   There was no basis for objection.   Thus, petitioner's counsel did not fall below an objective standard of reasonableness in failing to object.[6]

### 3.   Failure to Properly Litigate the Motion for Judgment of Acquittal.

Petitioner contends that both trial and appellate counsel failed to properly litigate his motion for judgment of acquittal. However, petitioner has failed to point to any action trial counsel failed to take on this issue.   Significantly, trial counsel made

---

[6] I decline to address petitioner's prosecutorial misconduct "cumulative effect" claim (see Pet.'s Traverse at 73-74), because it was not raised in petitioner's habeas corpus petition.   See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (traverse is not proper pleading to raise additional grounds for relief).

extensive arguments at the conclusion of the State's case that (1) the State had failed to carry its burden of production as to Aggravated Murder because it had not provided evidence of the underlying Assault IV; and (2) did not demonstrate that the petitioner murdered the victim with the specific intent of covering up the identity of the perpetrator of the Assault IV.  Tr. 953-66, 969-71.  After consideration, the trial judge denied petitioner's motion.  Tr. 971.  Petitioner has failed to identify any way in which trial counsel's representation was ineffective.  Further, I decline to address petitioner's argument that he is entitled to habeas relief because the trial court improperly denied his motion for judgment of acquittal, because no sufficiency of the evidence claim was alleged in his petition.  See Cacoperdo, 37 F.3d at 507 (traverse is not proper pleading to raise additional grounds for relief).

Finally, petitioner's argument that appellate counsel was inadequate for failing to challenge the sufficiency of the evidence on appeal fails.  The State presented evidence that petitioner admitted assaulting the victim before killing her.  Tr. 755-59; Resp.'s Exh. 126 at 5, 7, 8.  When discussing the motive for killing the victim, petitioner stated to police:

**Steffler:** She's bloody, she's pretty fucked up, and I just thought ah, there's no way.

**Kaney:**  Okay.  No way what?

**Steffler:** That I'd ever get away with something like that.

**Perkins:** What, that you'd get caught?  Okay, get caught what, for beating her, for cutting her a little bit?

**Steffler:** For just a major assault like that.

**Kaney:** I see.

**Perkins:** For a major assault, so you decided to finish it.

**Steffler:** I wasn't even thinking at all.

Tr. 755-59; Resp.'s Exh. 126 at 19.  The State also put on evidence that after petitioner assaulted the victim at the top of a hill, the victim began to flee down the hill.  At the top of the hill, petitioner took his knife out of its sheath, chased the victim approximately 60 feet down the hill, tackled her, stabbed her over thirty times, and then - after pausing momentarily - cut her throat.  Tr. 755-59, 859-74, 903-05, 916-47; Resp.'s Exh. 126. Petitioner was arrested in California while attempting to flee from arrest.  Tr. 676-83.  Although there was evidence presented that could be interpreted to negate the State's proof, it is clear that a rational trier of fact could have found the essential elements of Aggravated Murder beyond a reasonable doubt.

Accordingly, petitioner cannot show that there is a reasonable probability the result of the proceeding would have been different had appellate counsel raised a sufficiency of the evidence error. See Strickland, 466 U.S. at 694; see also Jackson v. Virginia, 443

U.S. 307, 319 (1979); State v. Hall, 327 Or. 568, 570, 966 P.2d 208 (1998).

**4.    Failure to Object to the Sentence.**

Petitioner argues that trial counsel was ineffective in failing to object to the stipulated sentence of life imprisonment without the possibility of parole on the ground that the Oregon Constitution does not allow for such a sentence for Aggravated Murder.  However, contrary to petitioner's assertion, trial counsel did file a pretrial motion that advanced the same argument petitioner raises here.  Resp.'s Exh. 119 at 6-11.  The trial judge denied the motion.  Tr. 380.

Petitioner does not identify any additional action trial counsel should have taken, other than renewing the motion on due process grounds.  Such a renewed motion, however, would have been controlled by the same substantive law that the trial court relied upon to deny the original motion.[7]  Thus, it was not deficient performance for counsel to refrain from renewing the motion on due process grounds.

**5.    Failure to Allow Petitioner to Testify in his Defense.**

Finally, petitioner argues that trial counsel was ineffective in refusing to allow petitioner to testify in his own defense.

---

[7] I note that the Oregon Court of Appeals has since foreclosed petitioner's argument.  See State v. Myers, 218 Or.App. 635, 180 P.3d 759 (2008).

Petitioner claims that because there was no explicit waiver of the right to testify, he did not waive such right.

In its decision denying post-conviction relief, the trial court found that petitioner knowingly chose not to testify. Resp.'s Exh. 133 at 2; see also Affidavit of Trial Counsel, Resp.'s Exh. 116 at 8. Petitioner has failed to rebut this finding with clear and convincing evidence. Accordingly, it is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). In light of this factual finding, petitioner cannot demonstrate that trial counsel was deficient in failing to allow petitioner to testify.

In sum, petitioner has failed to demonstrate that the state court's rejection of his claims of ineffective assistance of counsel was either contrary to, or an unreasonable application of clearly established federal law. Accordingly, habeas relief is not warranted as to the entirety of ground for relief six.

///

///

///

///

///

///

///

///

///

36 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus (#2) is DENIED.  Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this  17 day of January, 2013.

Malcolm F. Marsh
United States District Judge